Green, J.
delivered the opinion of the court.
In 1809, William Thomas obtained a judgment in Davidson county court, against George Walker, for about $500. In 1810, an execution issued and was levied on a tract of land in Williamson county, belonging to said Walker, but said tract of land was not sold. After the said levy and return of the execution, Walker died. Several years after the death of Walker, a venditioni exponas issued to the sheriff, commanding him to' sell the land levied on as aforesaid. No process has issued against the personal representative, heirs, or tertenants, since, the death of Walker, The complainant *329 Perkins purchased the land from Walker, received a deed and took possession, but his purchase was made after the rendition of Thomas’ judgment.- Overton is assignee of the judgment against Walker in favor of Thomas. This bill is brought to enjoin the venditioni exponas on the ground that it is void.
This cause has been twice argued before us with great zeal and ability, notwithstanding which, after the most elaborate investigation and mature reflection, on the part of the court, we feel that it is far from being free from difHculty.
The first question that presents itself is, whether after an execution has been levied on land and returned, but the land not sold on or before the return day of. the execution, the sheriff can proceed to sell the land without other process. Nothing is better settled, than that a sheriff who has levied on goods may sell them after the return of the writ, and even after he goes out of office, without a venditioni exponaSé
It is earnestly and forcibly argued for the defendant, that the sheriff has the same powers in relation to land, that he has over goods upon which a levy has been made. That by the act of George the Second, lands were subjected to the payment of debts; and the act of 1777, authorised the fieri facias to run against lands as well as goods, and that theie is no distinction, either as to their liability, or the sheriff’s power over them. We do not think that the conclusion to which consel arrive, follows necessarily from the premises. The very nature of the property creates a legitimate ground of legal distinction in relation to the powers of the sheriff. Goods are moveable, and capable of being taken by the sheriff into possession. They are liable to be wasted in the hands of the debtor, and hence the policy of the law in requiring the sheriff to take them in his possession. As possession of goods indicates ownership, and is in fact part of the title to them, it follows, that the sheriff would acquire by his levy and possession, a special property in them. Having thus deprived the general owner, the debtor, of the possession of his goods, the execution is satisfied' by the levy, if the goods were of value equal to its amount. With all these legal consequences resulting from the levy on goods, it *330 is perfectly consistent, that the sheriff should have the power to sell them after the return of the-execution. Although the return day of the execution has passed, yet he may make the sale; not because he has made the levy only, but also because he has a special property. The special property he has in the goods must be the principal reason why he can exercise this power. For he may sell, although he has ceased to be sheriff. The power to do so, does not exist by reason of his official character, for he has ceased to be an officer, not because of any legal process, for he has none, and that which he had is fundus officio. To what principle then arising out of his connexion with the subject can this extraordinary power be traced, if it be not mainly to the one before stated, his special pioperty in the goods. It is true it is not by virtue of this special property alone that he sells, for if that were so, he would, as contended by defendant’s counsel, convey only his special property to the purchaser. The law has placed the property in his possession, by means of the levy, and that act having been done by him while he had the lawful authority to perform it, places him in such a situation in relation to the property, that a right of disposition is conferred upon him. This principle, growing so naturally out of the situation in which the property is placed, in the bands of an ex-sheriff, is liable to no injurious consequences. The property is in his hands, he knows he has it, and he knows he is liable to the creditor for the amount of the execution he had levied on it, and to the debtor for the value of the property over and above the sum for which It was seized. It is his interest to sell, and discharge himself of his trust at once; and it is the interest of both debtor and creditor that he should sell, which either one or the other will not fail to cause him to do, if he delays, by quickening process.
But how different is the situation and powers- of the sheriff, in almost all (hese particulars in relation to land. It is not capable of being wasted, therefore there is no necessity for the sheriff to take possession. He acquires no special property in the land levied on, and can maintain no action in relation to it; nor does a levy on land satisfy the execution. *331 Hogshead vs. Caruth, 5 Yerg. 227. Upon what principle then can he sell.the land after the return of the fi. fa. ? Suppose he goes out of office, and years, as in this case, elapse, before the sale is sought to be made; is he to keep in his memory, that he once had an execution in his hands, and that he levied it on a particular tract of land? How is he to know that the judgment has not been satisfied? that an alias execution has not been levied on other property and satisfied by bis successor? Although an execution may be levied on land, if before the sale, it shall come to the knowledge of the sheriff that there is personal property on which he can levy, he is bound to abandon the land and seize the personal estate. 5 Yer. 227. The levy is not, therefore, a satisfaction of the execution. It does not effect a disseizin of the debtor, nor vest in the sheriff any right. It has no other operation than to fix upon that particular tract, as the subject from which the sum claimed in the execution is to be raised.
In view of these considerations we cannot give our assent to the proposition, that a levy on land, one of the slightest and most undefined acts a ministerial officer can perform, shall have the tremendous effect of divesting the freehold right of a man in possession, and of investing the. sheriff with the power of selling it after the execution has spent its force. If he can sell at all after the return of the execution, he can sell at any distance of time afterwards, upon the mere request of the creditor and his own íecollection that a levy was made. In this view of the subject we are supported by the supreme court of North Carolina. In the case of Barden vs. McKinnie, 4 Hawk. Rep. 263, it is determined that a sale by the sheriff, of real estate, after the return of a fi. fa., and without a new writ, is made without authority, and passes no title. It is true, that in South Carolina, 1 Constitutional Rep. 324: 2 Bays Rep. 129: and in Kentucky, 4 Bibb’s Rep. 345, a different doctrine prevails. In those cases no distinction is taken between personal and real estate, and the principles which have been so long settled in relation to the former, are made to apply in their whole extent to the latter. Because lands are by statute, made liable to be sold for the satisfaction of judgments, they hold, as the counsel for the *332 defendant now argues, that there can be no distinction as to the sheriff’s powers and duties. It is believed that from the several points of difference herein before noticed, a ground for making a distinction exists, both upon principle and upon the policy of the law. Nor is it probable, that either of the courts before referred to, would have disposed of the subject with so little consideration and argument, had it not been for the facts that in all the cases, the sales occurred soon after the levy, and immediately subsequent to the return day of the fi.fct. Had the case occurred of a sale some twenty years after the levy and return of the fi. fa., by an individual no longer sheriff, upon his recollection that when in office he had levied an execution on the land in question, it would probably have received a very different consideration and determination- The mischief and absurdity of tolerating the exercise of so tremendous a power, would have been too startling to have met with a grave and deliberate sanctjo.p. And yet we must see that such a consequence might follow from the doctrine of the cases. In relation to personal property no such mischief can exist. The property remaining in the hands of the sheriff, it is the interest of all parties to force a speedy disposition of it. The creditor is not entitled to another fi- fa., for the former one is satisfied by the levy. He will therefore urge a sale, and hold the sheriff liable for the amount of his execution. The debtor, to obtain any surplus the property may sell for, beyond the amount of the execution, will force the sheriff to perform his duty speedily. But in relation to land, the consequences are wholly different. The levy does not satisfy the execution-, so that the plaintiff is not prevented from getting an alias fi. fa., if he shall choose, and satisfying it out of other property. The debtor still retains the possession of his land, and should he know of the levy, he will have no motive to hasten the sale. Thus it remains for years before the sale is effected.
Upon the whole, we conceive it to be more consonant to principle and to sound policy, to declare that a sale of land made after the return of the fi. fa., without other process having issued, to be without authority and void.
2. But it is contended, that as in this case, there was issued *333 & venditioni exponas, the sale might be regularly made, although no scire Jadas has issued against the heirs or representatives of Walker, because the levy was before the- death; and if sold under the venditioni exponas, the sale would relate to the levy, and intermediate circumstances cannot be noticed. It is true, the sale would relate to the levy, but it does not follow that intermediate rights which have arisen ;are not to be noticed.
The doctrine of relation is a fiction of law, intended to .subserve the ends of justice; nor will it apply in any case, ■except ¡between the same parties, and for the same ends; ■but it shall never work a wrong to strangers, or defeat collateral acts which are lawful. 13 Co. 41. But give the doctrine of relation all the force and effect contended for, still the difficulty in this case is not obviated. If a venditoni exponas •must issue, to confer on the sheriff power to proceed with the sale, that process must have parties in being. If it be awarded and bear teste after the death of the execution debtor, it cannot be against him and command the sale of his land. He cannot be spoken of as existing, and he can have no land, that having vested in the heirs. It is not like the oase of the award of an execution after the death, but which bears teste before the death. Tn that case, the award has relation to the teste, and the process speaks at a time when the party was in life. But in this case, it is not the award of the process 'that has relation to a time before the death, and speaking .as of a period before that event, but it is the act the process commands to be done, which relates to another act done before the death. Take the case of a justice’s execution levied on land. The constable has no authority to sell by virtue of the levy alone, but he must bring the process into court with his levy endorsed upon it, and the court direct a venditioni exponas to issue. When the sale is made, it relates to the levy and passes the title from that time. But although this be so, if the debtor had died after the levy, and ¡before the order of sale, the court could not proceed to make ■the order and award the process, without having new parties. It would be absurd to have a judicial proceeding against a dead man, and a solemn order directing land to be sold as. *334 his, when the court knew, that it has vested, by his death in his heirs. The order of the court has no relation to a time before the death. It speaks after the death, and it must speak between parties then in life. Nor does the fact that the sale when made, by virtue of this order, relates to the levy before the death, affect this question. This relation would be the same if the heirs were regularly made parties, and the venditioni exponas were issued against them, commanding the sheriff to sell the land which had been levied on in the life-time of the ancestor, and which descended to them cum onere. This venditioni exponas, in this case, was awarded after the death of Walker, and bears teste after his death, it is therefore void and must be enjoined. Affirm the decree.
Decree affirmed.